784 F.2d 1191
 54 USLW 2473
 Esther V. REIGH and Ivery Mae Simpkins and David Michael
Simpkins and Lenora C. Dannie, Appellees,
v.
Charles L. SCHLEIGH, in his official capacity as principle
clerk of the District Court for Washington County and Nancy
Mueller, in her official capacity as clerk of the District
Court for Howard County and William A. Dorsey, in his
official capacity as administrative clerk of the District
Court of Baltimore City, Appellants.
 No. 85-1021.
 United States Court of Appeals,
Fourth Circuit.
 Argued July 17, 1985.
Decided March 4, 1986.
Rehearing and Rehearing En Banc Denied April 1, 1986.
 
 Diana G. Motz (James G. Klair, Asst. Atty. Gen.; Stephen H. Sachs, Atty. Gen., Andrew H. Baida, Staff Atty., on brief), for appellants.
 Elizabeth A. Renuart, Legal Aid Bureau, Inc. (Julie Landau, on brief), for appellees.
 Before WINTER, Chief Judge, and RUSSELL and WIDENER, Circuit Judges.
 DONALD RUSSELL, Circuit Judge:
 
 
 1
 This is a suit challenging the constitutionality of Maryland's District Rules governing post-judgment attachments of property of a judgment debtor as issued by the Maryland Court of Appeals and separately codified at the time this suit was filed as the Maryland District Rules, Chapter 1, 100-700, 1100-1300. Chapter 100, Subtitles G & F contain the challenged procedures. The four plaintiffs are judgment debtors whose bank accounts had been attached in 1982 under writs of attachment which had been issued under such Rules but which had been vacated before this action was begun. They allege, and it was not disputed, that their bank accounts, which had been attached, consisted exclusively of either Social Security or Aid to Families with Dependent Children payments. In all cases, the plaintiffs filed with the Maryland court exemption claims and the claimed exemptions were sustained by the court in 1982. It was not until January 24, 1983 after the claims of exemption were upheld that the plaintiffs filed this action asserting the unconstitutionality on due process grounds of the procedures established under the Maryland Rules for the issuance of post-judgment writs of attachment.
 
 
 2
 The Maryland post-judgment attachment Rules, in force when this action was begun, made no provision for notice to the judgment debtors of their possible state or federal exemptions. The rules did provide that, if the judgment debtor, after learning of the garnishment, moved to quash the writ within thirty days, the court was required to hear such motion "forthwith." Prior to judgment below, however, the Rules were amended by the Maryland Court of Appeals to provide (1) for notice of the attachment to be given the judgment debtor by the person serving the writ upon the judgment debtor "promptly after service upon the garnishee" and (2) for notice to the judgment debtor at the same time as notice of attachment "that federal and state exemptions may be available" to him or her. The Rules, also, gave the judgment debtor notice of the right to file a motion claiming an exemption or objecting to the garnishment within thirty (30) days and to request a hearing on such motion, which, when requested, must be held "promptly." The parties seem to have agreed that the action should be determined on the basis of the Rules as amended and the decision of the district court from which this appeal is taken, proceeded on that basis.
 
 
 3
 After denying the defendants' motion to dismiss the action for mootness, the district court reviewed the Rules as revised and concluded that the notice of the issuance and service of the writ on the judgment debtor, as provided in the Rules, complied to that extent with the requirements of due process but that the procedure in the Rules remained defective in two respects:
 
 
 4
 (1) They "do not provide for adequate notice to a judgment debtor of the claims of exemption which are available"; and
 
 
 5
 (2) They do not "assure resolution of a claim of exemption within a reasonable time," which the district court fixed as "within two weeks" from the time the claim of exemption is filed.
 
 
 6
 In order to correct these perceived defects, the district court enjoined the issuance of post-judgment writs of attachment without conforming to a form to be approved by the court listing all exemptions and setting forth a procedure for resolving such claims for exemption by the judgment debtor within two weeks (later stated as 15 days). Reigh v. Schleigh, 595 F.Supp. 1535 (D.Md.1984).
 
 
 7
 The defendants have appealed from the judgment entered by the district court. Their first ground on appeal is the mootness of plaintiffs' claim. Turning to the merits, they cite Endicott Johnson Corporation v. Encyclopedia Press, Inc., 266 U.S. 285, 45 S.Ct. 61, 69 L.Ed. 288 (1924) as authority for the proposition that there is no due process right on the part of a judgment debtor to notice of the issuance of a writ of attachment, of his entitlement to state or federal exemptions, or to a right to contest the writ promptly. Assuming, however, that due process guarantees these rights to the judgment debtor, the defendants argue that the amended Rules, which were the rules on which the district court based its ruling, fully satisfied due process requirements and the contrary judgment of the district court is in error.
 
 
 8
 While there is much to be said for the mootness argument since the writs of attachment in the case of all four plaintiffs had been vacated before this action was commenced;[1] we are of opinion that under our decision in Harris v. Bailey, 675 F.2d 614 (4th Cir.1982), the facts of which are almost identical to those in this case, the claim of mootness by the defendants is without merit. Nor is an issue posed in this case on the duty of the defendants under due process grounds to provide notice in a post judgment proceeding of the issuance of the writ of attachment to the judgment debtor and to acquaint him of his opportunity to make a timely contest of the writ or of his right to a "prompt" hearing on request. The amended Rules give the judgment debtor those rights. What is challenged in these Rules and only what is challenged is whether the notice of the writ must include notice of all possible federal and state exemptions, and whether the hearing afforded the judgment debtor must be held "within two weeks" or "fifteen days" after request therefor.
 
 
 9
 Addressing the first of these two questions, we begin by recognizing that there is a conflict in the decisions on the necessity for the notice to the judgment debtor of the writ to include a list of all available federal and state exemptions that might be available to the judgment debtor. Finberg v. Sullivan, 634 F.2d 50 (3d Cir.1980) (en banc) is generally cited as the recognized authority for the view that all available exemptions must be listed in the notice to the judgment debtor, though the actual holding in that case did not go that far. For other cases, generally cited to this effect, see Neeley v. Century Finance Co. of Arizona, 606 F.Supp. 1453 (D.Ariz.1985); McCahey v. L.P. Investors, 593 F.Supp. 319 (E.D.N.Y.1984); Clay v. Fisher, 584 F.Supp. 730 (D. Ohio 1984); Dionne v. Bouley, 583 F.Supp. 307 (D.R.I.1984), modified, 757 F.2d 1344 (1st Cir.1985); Deary v. Guardian Loan Co., Inc., 534 F.Supp. 1178 (S.D.N.Y.1982); Betts v. Tom, 431 F.Supp. 1369 (D. Hawaii 1977). In Finberg the bank account of the judgment debtor had been seized; the account consisted of funds "entirely exempt from attachment and garnishment," representing deposits of Social Security benefits and moneys within a general "exemption to a class of debtors which includes Mrs. Finberg." 634 F.2d at 52. Both of these exemptions were said to be "designed to protect a debtor's means of purchasing basic necessities" and failure to recognize such exemptions could cause "serious, undue hardship" to a debtor in Mrs. Finberg's situation. The majority in that case, after declaring that "the content of the notice depends upon the circumstances of the particular case," required that the notice to Mrs. Finberg should expressly identify those two exemptions but it added this cautionary note: "Because Mrs. Finberg did not claim other exemptions under Pennsylvania law, we need not determine the effect of our decision on Pennsylvania exemptions not claimed by Mrs. Finberg." 634 F.2d at 62. Finberg, thus, is not authority for the proposition that due process requires that the notice to the judgment debtor include all possible exemptions; it only declared that, based on "the circumstances" of Mrs. Finberg's particular case, two express exemptions claimed by Mrs. Finberg should have been noticed.[2]
 
 
 10
 Many of the decisions which have followed Finberg and have been cited in support of a rule that due process compels a listing of all exemptions in the notice to the debtor have generally had the same ambiguity as Finberg. Thus, in Neeley v. Century Finance Co., 606 F.Supp. at 1465, the court said categorically that "[d]ue process does not require that all exemption statutes be identified and set forth in detail" in the notice given to the judgment debtor in a post-judgment garnishment or attachment, but only "[t]hose exemptions that occur frequently should be included in the notice" and, in that context, the court declared it was "not deciding, other than for wages, [under the Arizona statute] what particular exemptions must be identified." To the same purport is Harris v. Bailey, 574 F.Supp. 966, 971 (W.D.Va.1983). There the court expressly said that "notice of all available exemptions," which would represent, in the court's words, "a potentially confusing laundry list" more likely to confuse than to clarify, was not required by due process. Its rule was "that the summons served on the debtor contain a list of those essential federal and state exemptions that provide the basic necessities of life for someone in Mrs. Harris' position. The Social Security exemption certainly should be included; such benefits provide the bare necessities for many in our society." The New York cases of Deary v. Guardian Loan Co., Inc., 534 F.Supp. 1178 (S.D.N.Y.1982), and McCahey v. L.P. Investors, 593 F.Supp. 319 (E.D.N.Y.1984) dealt with a state procedure which by statute required a notice to the judgment debtor, giving him what the notice said was "a partial list of money which may be exempt" [the statutory list included nine specific exemptions]. See section 5222 of the New York Statutes as quoted in McCahey in note 1 on pages 321-322. Manifestly, the notice was defective if it did not comply with the mandate of the statute. However, the important fact is that the notice only included nine exemptions which the legislature found to be required included in the notice to the judgment debtor.
 
 
 11
 The contrary view has been expressed in Dionne v. Bouley, 757 F.2d 1344, 1354 (1st Cir.1985), modifying 583 F.Supp. 307 (D.R.I.1984); Brown v. Liberty Loan Corp. of Duval, 539 F.2d 1355, (5th Cir.1976), cert. denied, 430 U.S. 949, 97 S.Ct. 1588, 51 L.Ed.2d 797; see also Duranceau v. Wallace, 743 F.2d 709, 712-713 (9th Cir.1984)[3] and particularly, the carefully reasoned dissents of Judge Aldisert and Judge Weis in Finberg. 634 F.2d at 64 et seq., and 93 et seq. In his dissent, criticizing the requirement that the exemptions be listed in the notice to the judgment debtor, Judge Aldisert said (634 F.2d at 84):
 
 
 12
 The majority have constructed a veritable Frankenstein, a complicated procedure that far exceeds the hurt it is designed to heal and will, in the end, prove counterproductive. Given the sheer numerousness of Pennsylvania exemptions and the complexity of alternative procedures to claim them, the majority's requirement in reality departs substantially from the simple notice the Supreme Court recommended in another context. See Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 13-15, 98 S.Ct. 1554, 1562-1563, 56 L.Ed.2d 30 (1978). Moreover, the notice requirement has no analogue in the Federal Rules of Civil Procedure, which were promulgated by the United States Supreme Court. The brute fact is that there are so many exemptions that to set forth this information on a writ would present a mass of incomprehensible boilerplate reeking with legalese.
 
 
 13
 Judge Weis, in his dissent on the same subject, declared (634 F.2d at 93):
 
 
 14
 I also share Judge Aldisert's misgivings about the desirability and effectiveness of the notice required by the majority. There are simply too many variations and nuances in the Pennsylvania exemption laws to permit the preparation of a brief yet comprehensive, and simple yet precise, explanation that will be of assistance to the average debtor. The fragmented approach taken by the majority in this case inevitably will lead to further litigation and the same overkill that has characterized the excrescent disclosure requirements created by administrative and judicial interpretations of the Truth in Lending Act.
 
 
 15
 Judge Weis also refers to "the $300 exemption under Pennsylvania law" and suggests that if notice of such exemptions were required to be included it should set out as well the exemptions to that exemption under the statute just as exemptions for certain pension benefits must be included if Social Security payments are to be declared exempt in the notice to the judgment debtor. Finally, he comments that he was "not impressed with the equities of imposing additional procedural burdens on a creditor who has already been put to the trouble and expense of securing a judgment against a debtor who has failed to meet his obligations.... Some responsibility for safeguarding the exemption could be placed upon the debtor." Id. at 93, 94.
 
 
 16
 In Dionne v. Bouley, supra, the court ruled that a decision similar to that under review in requiring notice to judgment debtor of all exemptions at time of the attachment was in error, saying (757 F.2d at 1354):
 
 
 17
 We do not agree that, to be constitutional, the notice provided to a judgment debtor after attachment must inform him of all, or even close to all, of the available exemptions. In a somewhat analogous situation, the Court has said that due process requires notice to be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." ... In the present situation we think the debtor must be informed of the attachment and of the availability of a prompt procedure to challenge the attachment, ... together with the fact, generally stated, that there are certain exemptions under state and federal law which the debtor may be entitled to claim with respect to the attached property. The state, however, is not required to supply the debtor with a "laundry list" of statutory exemptions. The latter requirement, we think, gives insufficient weight to the state's interest in avoiding overly burdensome requirements. ... We know of no parallel situation where the due process clause has been held by the Supreme Court to mandate judicial enactment of a kind of "truth in lending" provision. We are persuaded by the dissenters in Finberg v. Sullivan that a detailed list of state and federal exemptions is neither required by the Constitution nor would it, in the final instance, be useful to the debtors.... A detailed requirement of this type--which would have to be constantly updated whenever state or federal law was revised--contradicts the spirit of modern civil procedure which encourages notices to be effected in a single, concise and direct manner ... In any case, while of course the state is free to adopt such an elaborate requirement if it wants, we do not think the Constitution compels it. (citations omitted)
 
 
 18
 We are persuaded by the reasoning in the Finberg dissents and in Dionne that due process does not mandate that the notice to the judgment debtor of the attachment should include a list of all the exemptions possibly available to the judgment debtor; it is sufficient that the notice alert the judgment debtor "that there are certain exemptions under state and federal law which the debtor may be entitled to claim with respect to the attached property, and that there is available a prompt procedure for challenging the attachment."
 
 
 19
 Even the decisions which require some specification of exemptions shy away from requiring a listing of all exemptions. Most of these decisions, as we have seen, identify only one or two exemptions which they would require to be specified in the notice. Such decisions give diverse reasons for the specification they require. In Neeley, for instance, the court said those exemptions "that occur frequently" should be identified in the notice but the court failed to indicate which exemptions would qualify under this ruling for specification, leaving that matter open for other litigation. Harris, after declaring that a "laundry list" specification of all exemptions "is not required by due process" laid down the rule that only those exemptions which cover moneys "that provide the basic necessities of life for someone in Mrs. Harris' position," a rule which at least, the court says, should include Social Security payments. Finberg established much the same rule, if Mrs. Finberg claimed such exemptions but only if she did. All of these standards for determining which exemptions to be specially identified in the notice to the judgment debtor are elusive and indefinite, mere encouragement to confusion, misunderstanding and other litigation. Must a judicial officer determine at his peril whether an exemption "occur[s] frequently" or what exemption was necessary in the case of one whose condition was like either Mrs. Harris' or Mrs. Finberg's in order to provide them with "the basic necessities of life," which we would assume would be related to the judgment debtor's age, education, financial condition, etc.? A requirement for listing all exemptions or an abbreviated or "fragmented" list of such exemptions under the standards set by Finberg and its progeny would create a "veritable Frankenstein, a complicated procedure that far exceeds the hurt it is designed to heal and will, in the end, prove counterproductive," as Judge Aldisert correctly observed. We are satisfied that a notice which advises the judgment debtor that there are state and federal exemptions that may be available to him, coupled with notice of the right to contest the attachment, meets the requirements of due process. The notice provided in the revised Rules in this case meets this test.[4]
 
 
 20
 The district court, also, found that a requirement of a "prompt" hearing on a judgment debtor's claim of exemptions against a writ of garnishment violated due process. It held specifically that the Rules would satisfy due process only if they provided explicitly that the hearing on any challenge to the writ be heard "within two weeks." It justified such inflexibility in the statute because, without such an absolute requirement, the rights of the judgment debtor could be "too easily abused" and there was too much "opportunity for constitutional deprivation." We are unable to agree--at least on the present record before us.
 
 
 21
 The Rules issued by the State Court mandate that the hearing on the judgment debtor's request for a hearing on his exemption claim shall be held "promptly." That, incidentally, was all that the plaintiffs in this case asked for in their prayer for relief when they commenced this action. Thus, in their "Statement of Claim" in their complaint they asserted that the Rules then in force failed to "require a prompt hearing when requested by the judgment debtor to contest an attachment." (Italics added). The amended Rules, however, provide them with a right to "a prompt hearing." In determining whether, despite the amendment of the Rules to provide for the "prompt" hearing that the plaintiffs had requested in their prayer for relief, the district judge was correct in promulgating under due process a specific time limit within which a hearing to contest an attachment or garnishment should be held under the Maryland procedure, we begin by noticing, as did the court in Trans-Asiatic Oil, Ltd. S.A. v. Apex Oil Co., 743 F.2d 956, 960 (1st Cir.1984) that " '[t]he very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation,' "[5] Further, federal courts should be loath both on grounds of comity and federalism to intrude upon the rule-making functions of state courts and, even in those rare instances when compelled to do so under their duty to uphold federal constitutional rights, should act cautiously and with moderation. And this principle has particular applicability where state judicial procedures are concerned. See dissenting opinion of Aldisert, J. in Finberg at 69-70, especially note 6.
 
 
 22
 It is a new idea that federal courts should fetter state courts with inflexible time frames for the administration of their courts. Only in Finberg prior to this case has an appellate court imposed on state courts under due process a rule requiring that all challengers to an attachment or garnishment be heard within two weeks; other courts have followed a more flexible course, finding due process satisfied by a requirement of a "prompt" or "expeditious" hearing. In Dionne, for instance, the court recognized, as has the Court of Appeals of Maryland, that the judgment debtor is entitled to "a prompt post-attachment hearing," 757 F.2d p. 1357, but it eschewed any attempt at stating that term in strict mathematical terms (i.e., fifteen days). In McCahey v. L.P. Investors, 774 F.2d 543, 552, 553 (2nd Cir.1985) the court was confronted with an objection to the New York garnishment statute which provided for an "expeditious" or "prompt" hearing on exemption claims by the judgment debtor. The judgment debtor asserted the statute was constitutionally defective because it did "not provide a mandatory outside time limit on according a hearing on an exemption claim." The court refused to find the statute invalid on this ground, saying that "we are unwilling to invalidate a statute because it might, but need not, be applied in an unconstitutional manner." The Supreme Court itself in North Georgia Finishing, Inc. v. Di-Chem, Inc., 419 U.S. 601, 606, 95 S.Ct. 719, 722, 42 L.Ed.2d 751 (1975), which was a pre-judgment attachment where a party would be expected to enjoy greater rights than one who has already been adjudged judicially liable, required only an "early hearing," or as Justice Powell stated in his concurring opinion, "a prompt and adequate hearing," p. 613, 95 S.Ct. p. 726. It is true this was an admiralty case and not one involving a garnishment of an individual's bank account; but it is important to emphasize that it was a pre-judgment attachment and not, as here, a post-judgment attachment. Trans-Asiatic, supra, also involved a pre-judgment attachment in admiralty. It found that "a hearing within four weeks of [the defendant's] request for an expedited hearing" on the validity of the attachment met the standard for promptness. 743 F.2d at 962. In Deary v. Guardian Loan Co., 534 F.Supp. 1178 (S.D.N.Y.1982) the court, though it agreed with Finberg that notice of exemptions should be given the judgment debtor in state garnishment post-judgment proceedings because required by state statute, did not follow Finberg on the requirement of an inflexible standard for the holding of a hearing on a challenge to the writ of attachment, saying only (p. 1188):
 
 
 23
 Assuming without deciding that some prompt post-enforcement procedure would satisfy constitutional requirements, the opportunity to challenge the enforcement action must not be unnecessarily delayed.
 
 
 24
 In Brown, supra, the Fifth Circuit indicated that unless "there [was] an extended delay in setting the hearing on the exemption in state courts," there was no occasion for action by a federal court on due process grounds. (Italics added)
 
 
 25
 In this case, there is no evidence of "extended delay," no "foot-dragging" or dilatoriness by the state courts in disposing of challenges to garnishment proceedings. Two of the claims in this case had the hearing set and the contest disposed of within two weeks after the judgment debtors filed their claims of exemptions and this occurred when the judgment debtors were proceeding pro se. In the third case, the claim of exemption was disposed of within a month. In that case, the judgment debtor was represented by counsel which would suggest that the proceeding may have presented some unusual features. In any event, there is no basis for a finding of any "extended delay" or inattention to these claims of exemptions by the state courts in these three cases. In fact, there is no allegation of such a delay in the complaint nor is there any basis in the record for a finding that the hearings in any of the three cases were unduly delayed.[6]
 
 
 26
 The district court, however, found "promptly" too neutral a term for fixing the time within which a hearing or the challenge to the garnishment was to be held, even though that term was used approvingly by the Supreme Court in Di-Chem, because, it said, it was a term "too easily abused" in practice and fraught with "the opportunity for constitutional violation." We are unable to accept this as a basis for imposing on the courts of Maryland an inflexible rule governing procedure in the administration by the courts of that State of proceedings such as those involved here when, as here, there is no credible evidence of "extended delay" on the part of the Maryland courts in disposing of challenges by garnishees to the writ of attachment. That is not to say that if at some future date there should be evidence of "extended delay" in any other case and something more than mere hypothetical scenarios of possible judicial abuse shown, a federal court will stay its hand. But, without any evidence of such delay in this case, the district court erred in undertaking in this record to tether the state's proceedings to any mathematical rule for disposing of the challenge to the writ of attachment and to invalidate the state procedure "because it might, but need not, be applied in an unconstitutional manner." See McCahey.
 
 
 27
 The judgment of the district court enjoining the state courts of Maryland in their garnishment proceedings, to include a list of all federal and state exemptions in the notice of garnishment served on the judgment debtor and to provide on request a hearing on any challenge by a judgment debtor to the garnishment writ within fifteen days after the filing of the request is accordingly vacated and the cause is remanded to the district court for the entry of an appropriate order in conformity with this decision.
 
 
 28
 VACATED AND REMANDED.
 
 WIDENER, Circuit Judge, dissenting:
 
 29
 I respectfully dissent. I believe that there is no case or controversy and that we are without subject matter jurisdiction to decide the merits.
 
 
 30
 The majority's reliance upon Harris v. Bailey, 675 F.2d 614 (4th Cir.1982), I suggest, is misplaced.[1] The plaintiff in Harris filed her Sec. 1983 action before her state garnishment proceeding was decided. 675 F.2d at 616. Traditional doctrines of mootness were held to be applicable because there was at least an actual controversy existing regarding the accounts which had been garnished at the time the federal case was filed. Here all three of the state garnishment proceedings were concluded in the plaintiffs' favor before this Sec. 1983 action was filed. Plaintiff Esther Reigh's account was held exempt from attachment by a state court ruling on July 29, 1982. Plaintiffs Ivery Mae Simpkins and David Simpkins received a state court ruling exempting their account on December 6, 1982. Plaintiff Lenora C. Dannied received a state court order exempting her account on December 29, 1982. This suit was filed in the district court on January 24, 1983. Thus no controversy existed when the federal suit was filed. All that was present was the fear of future controversy.
 
 
 31
 I think City of Los Angeles v. Lyons, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) requires the dismissal of this action on the ground that no case or controversy exists. In Lyons the plaintiff sought an injunction[2] against the City barring the use of choke-holds by police officers. Lyons had been the victim of such control hold procedures in the past and argued that he could again be the subject of such a procedure in the future absent judicial relief. While the Court did not find Lyons' claim moot it found that the complaint did not allege a case or controversy to satisfy the threshold requirements of Article III of the Constitution. Relying upon the language of O'Shea v. Littleton, 414 U.S. 488, 495-96, 94 S.Ct. 669, 676, 38 L.Ed.2d 674 (1974) the Court said "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." Lyons, supra 461 U.S. at 102, 103 S.Ct. at 1665.
 
 
 32
 Plaintiffs here sought to have the state post-judgment attachment procedure declared unconstitutional and its enforcement enjoined. They have alleged no more than Lyons did, that is that they were exposed to illegal conduct in the past. Their belief that their bank accounts may again be attached does not create a case or controversy that must be present to invoke federal court jurisdiction. Lyons, supra at 104, 103 S.Ct. at 1666.
 
 
 33
 I would therefore vacate the judgment below and remand with instructions that the district court dismiss the action for want of a case or controversy under Article III of the Constitution.
 
 
 
 [1]
 See, the dissenting opinion of Aldisert, J., in Finberg v. Sullivan, 634 F.2d 50, 68 (3d Cir.1980)
 
 
 [2]
 This limited construction of the ruling of the majority in Finberg was recognized by Judge Aldisert and was a part of his dissent (634 F.2d at 82):
 Although the majority are unwilling to provide notice of all exemptions available under state and federal law, there is no principled reason for excluding other exemptions of equal importance in future cases. It will therefore not be unexpected for the Community Legal Services, Inc. to bring a new case in the district court alleging deprivation of due process for a creditor's failure to notify a debtor of other exemptions.
 
 
 [3]
 The state garnishment law required notice of the exemption for 50% of the judgment debtor's wages but imposed no obligation to notice any other specific exemption. This case, though arising under the law of the State of Washington, was apparently similar to the Arizona case involved in Neeley, supra
 
 
 [4]
 While the revised Rule issued by the Court of Appeals of Maryland clearly states that the writ of attachment served on the judgment debtor shall "notify the judgment debtor that federal and state exemptions may be available" (Rule 3-645 (c)(4) ), the appellees have attached in an Addenda to their brief a form of attachment (see pp. 2-3 of the "Addenda to Brief of Appellees"), which is not in the form prescribed by the Rule--which, in fact, does not refer to federal exemptions at all--and which the appellees suggest is the form still used by the state courts. The district court should inquire on remand whether the form of writ now in use conforms to the Rule noticing the judgment debtor that there may be federal and state exemptions available to him. If the form in use does not conform, and is in the language set forth in appellees' "Addenda," the district court should require prompt revision of the writ of attachment form
 
 
 [5]
 Quoting from Cafeteria Workers v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961)
 
 
 [6]
 All three of these cases were disposed of when the hearing requirement was "forthwith" and not "promptly" as in the present Rule. We seriously question, however, whether the state courts will become less diligent in disposing of claims of exemptions in garnishment proceedings simply because the Rule has substituted "promptly" for "forthwith," and, therefore, regard the change of little or no moment
 
 
 [1]
 As I indicate, Harris is distinguishable from our case on its facts. If the majority feels it is not, however, then we should simply decline to follow the 1982 circuit precedent in favor of the 1983 Supreme Court precedent
 
 
 [2]
 Lyons also sought damages against the City of Los Angeles for past use of the procedure. The Court's opinion does not effect that portion of Lyons' claim